

FILED BY_____D.C.

JUN 09 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Shauna Barnard
16699 Collins Ave #4204
Sunny Isles Beach FL, 33160
Plaintiff in Pro Per

## UNITED STATES DISTRICT COURT SOUTHERN

## DISTRICT OF FLORIDA

| | |
|---|---|
| **S.B, an individual**;<br>Plaintiff,.<br><br>vs.<br><br>**CUT 38,**<br>**JOHN DOE #1**<br>**JOHN DOE #2**<br>**JOHN DOE #3**<br>.Defendants. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF, PURSUANT T AMERICANS WITH DISABILITIES ACT (42 U.S.C. §§ 12181 ET SEQ.)**<br>**1.   AMERICANS WITH DISABILITIES AC (42 U.S.C. §§ 12181 ET SEQ.);**<br>**2.   NEGLIGENCE / NEGLIGENCE PER SE**<br>**3.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.** |

## I.      .INTRODUCTION..

Plaintiff S.B. hereby alleges the following facts and submits the following claims for relief against Defendants CUT 38, and DOE Defendants 1 through 3.

1.      Plaintiff S.B. is a licensed and practicing fitness instructor. S.B is also clinically diagnosed with Post Traumatic Stress Disorder (PTSD), Depression and Anxiety. These disorders result in hyper-vigilance, anxiety attacks, flashbacks, suicidal ideation, and self-harming behaviors, among other consequences, and substantially impact S.B.'s functioning in everyday life.

2.      Under advice from her treating medical providers, S.B. requires the full-time assistance of a service dog, (Drama) that has been individually trained to do work and perform

tasks to assist S.B. with her daily functioning that is impacted by her disabilities, including to alleviate or avoid hyper-vigilance, heightened anxiety, anxiety attacks, flashbacks, sensory overload, suicidal ideation, and self-injurious behaviors.

3.      S.B visited CUT 38 for the purpose of dining. CUT 38 denied her reasonable accommodation or modification of its policies when the restaurant refused to permit Drama to accompany her. As a result, S.B has experienced: significant emotional distress, including hyper-vigilance, flashbacks, sensory, overload, increased anxiety, anxiety attacks, suicidal ideation and self-injurious behaviors.

4.      S.B. brings this action against Defendants for their violations of Title III of the Americans with Disabilities Act (42 U.S.C. §§ 12181 et seq.),common law negligence and negligence per se, as well as intentional infliction of emotional distress. S.B seeks declaratory and injunctive relief to permit her admission to CUT 38, accompanied by her service dog. S.B further seeks treble her actual damages, consisting of emotional distress, as well as the out-of-pocket expenses.

## II.    JURISDICTION AND VENUE.

5.      As this action arises in part under the Americans with Disabilities Act, this Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), and has jurisdiction over the claims declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6.      Venue is proper in the Southern District of Florida under 28 U.S.C. §1391(b), as the events at issue occurred in this judicial district.

## III.   PARTIES.

7.      At all relevant times, Plaintiff S.B. has suffered from Post Traumatic Stress Disorder (PTSD), as well as Depression and Anxiety, which substantially limit her daily functioning and major life activities, including, but not limited to, eating, drinking, socialization, remaining alert in the present moment, driving, and sleeping. As such, S.B is and has been a person with a disability within the meaning of the Americans with Disabilities Act ("ADA") and at all relevant times has resided in Miami-Dade County, Florida.

8.      Plaintiff is informed, believes, and based thereon alleges that at all relevant times Defendant CUT 38, has been a Florida Business that serves food and alcohol at a facility known as CUT 38 located in Sunny Isles Beach Florida. At all relevant times, CUT 38 has been a "person who owns, leases (or leases to), or operates a place of public accommodation" within the meaning of the ADA (42 U.S.C. §12182),.

9.      The identities of Defendants DOES 1 through 3 are unknown at this time. DOES 1 through 3 are alleged to be in some manner responsible for the violations of law alleged by Plaintiff. Plaintiff will amend this Complaint when their identities become known.

10.      At all relevant times, all Defendants and each of them, were acting in concert with each other and were the agent, principal, subsidiary, representative, alter ego, officer, employer, employee, manager, director, shareholder, partner, co-conspirator, aider and abettor, and fiduciary in proximately causing the injuries, and damages alleged herein.

11.      At all relevant times, all Defendants and each of them were legally responsible to Plaintiff for each of their co-defendants' wrongs, acts, and omissions alleged herein as though they had each committed each act themselves, and at all times authorized, directed, and ratified the acts and omissions of each remaining defendant.

## IV.    ADDITIONAL FACTS COMMON TO ALL CLAIMS.

12.    S.B. has been clinically diagnosed with Post Traumatic Stress Disorder (PTSD),.Depression and Anxiety since the early 2000s.

13.    S.B.'s diagnosed disabilities impact her essential functioning in everyday life, including but not limited to:.

      a.    Diminished feelings of safety and security and heightened concern and worry regarding dangers and threats, which results in hyper-vigilance, and at times can lead to heightened anxiety and anxiety and/or panic attacks, which interfere with daily activities, such as socialization, or showering or bathing;

      b.    Flashbacks, sensory overload, and anxiety attacks, which can result in a freeze response, where she is not alert and aware of what is occurring in the present time, which can interfere with everyday activities, such as driving;.

      c.    Nightmares and difficulty sleeping; and.

      d.    Suicidal ideation and/or engaging in self-harming behaviors.

14.    At all relevant times, S.B. has been under the care of medical providers who prescribed S.B. a service animal to assist with her daily functional limitations.

15.    S.B. has had her service dog since 2009, and since that time S.B. has individually trained her service dog to do work and perform tasks that are directly related to her disabilities. S.B. trained Drama with the assistance of an organization that specializes in psychiatric service dog training, as well as professional dog trainers.

16.    Specifically, S.B.'s service dog has been trained to perform the following work or tasks, among other functions:.

a.   Perform a "medical alert" task in which the service dog is cued.to intervene and interrupt when S.B. exhibits signs of an onset of an anxiety attack or flashback, and if this psychiatric event is severe, the service dog cues S.B. to take medication as needed;.

b.   Perform an alert task when S.B. is driving to ensure she remains alert and aware of her surroundings to drive safely;.

c.   Perform a "corners" task to assist with hyper-vigilance, in which S.B cues her service dog to lead the way around a corner and alerts her if a person is approaching;.

d. Perform an "about face" task to assist with hyper-vigilance, in which S.B. cues her service dog to positions such that she can see behind S.B and alert her if a person is approaching;.

e.   Perform an alert task to assist with hyper-vigilance by alerting S.B. to the presence of persons in close proximity or the vicinity of her living space;.

f.   Perform an alert task to assist with S.B.'s hyper-vigilance while showering or bathing, in which her service dog is cued to sit in a chair outside/near the bathroom and keep watch while S.B. in.in the shower or bathing, and alert her if there is someone approaching;.

g.   Perform a "boundary control" task, in which in crowded environments or situations where strangers are in close proximity, the service dog moves around S.B to maintain her personal space;.

h.   Perform a task to interrupt and wake S.B. from nightmares;.

i.    Perform a task to interrupt any self-injurious behaviors undertaken by S.B.;.

      j.   Interrupts any repetitive or compulsive behaviors, such as pacing or an impulse to flee;

      k.  Perform a task to provide "deep pressure therapy," in which the service dog is cued to provide dynamic warmth and pressure to alleviate increased anxiety and sensory overload; Perform a "signal alert" task, which permits S.B. to politely excuse herself from social situations that are beginning to trigger flashbacks, heightened anxiety, or anxiety/panic attacks; and. Additionally, Drama assists S.B. in maintaining a routine of everyday activities, including but not limited to waking, eating, drinking, going outside, and taking medication.

17.     On June 2nd, 2021 S.B. visited CUT 38 with the intention of eating dinner and having a few drinks. She was forcibly removed from the restaurant by a manager and two waiters.

18.     During the above described incident S.B. repeatedly informed the Defendant that she required the assistance of her service dog due to her disabilities, and requested that CUT 38 permit admission to her service dog to "*accompany her during her meal, as a reasonable accommodation*". S.B. alleges that on her visit, the restaurant refused to permit her service dog to accompany her, and physically pushed her out of the restaurant.

19.     At the time of her visit, the employees, personnel, decision-makers, or other agents of Defendant CUT 38 did not inquire into what work or tasks S.B's dog Drama did for her but instead insisted that "***all dogs***" were not permitted on the property, even "service dogs".

20.     S.B called the police to report the physical assault that she had just experienced. John Doe #1 used the opportunity to inform her that she would be trespassing if she ever returned.

21.     Plaintiff is informed, believes, and based thereon alleges that CUT 38 has in place and operates CUT 38 restaurant in accordance with policies or practices that discriminatorily restricts admission of individuals with disabilities with bona fide service animals. Such policies and practices have been in place at all relevant times and are ongoing. anguish and heightened mental health symptoms, including hyper-vigilance, flashbacks, sensory overload, increased anxiety, anxiety attacks, suicidal ideation.

22.     Due to the above-mentioned incident S.B has experienced significant emotional distress. From the time of the incident to present, S.B has experienced distress.

**V.     FIRST CLAIM FOR RELIEF.TITLE III OF THE AMERICANS WITH DISABILITIES ACT.42 U.S.C. §§ 12181 et seq.**

By Plaintiff Against all Defendants.

23.     Plaintiff re-alleges and incorporates by reference all previous paragraphs.

24.     Congress enacted the *Americans with Disabilities Act* upon finding among other things, that "*society has tended to isolate and segregate individuals with disabilities*" and that such forms of discrimination continue to be *a "serious and pervasive social problem."* 42 U.S.C. §12101(a)(2).

25.     In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "*a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities*" and "*clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities.*" 42 U.S.C. §12101(b)(1)-(2).

26.     Title III of the ADA provides in pertinent part:
        "*No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of*

*public accommodation by any person who owns . . . or operates a place of public accommodation."* 42 U.S.C. §12182(a). .27.

The ADA further provides that "*it shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.*" 42 U.S.C. § 12182(b)(1)(A)(ii).

28.     Discrimination under the ADA includes "*a failure to take such steps.as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services . . .*" 42 U.S.C. § 12182(b)(2)(A)(iii).

29.     The ADA further prohibits "*a failure to make reasonable modification.in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileged, advantages, or accommodations.to individuals with disabilities...*" 42 U.S.C. § 12182(b)(2)(A)(ii).

30.     Under the U.S. Department of Justice's regulations implementing the ADA, "*a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability.*" 28 C.F.R. § 36.302(c)(1).

31. A service animal is defined as "*any dog that is individually trained to.do work or perform tasks for the benefit of an individual with a disability, including a ... psychiatric, intellectual, or other mental disability*" and "*[t]he work or tasks performed by a service animal must be directly related to the individual's disability.*" 28 CFR § 36.104. The U.S. Department of Justice's regulations provide examples of service dog work or tasks, including "*providing non-violent protection or rescue work*" and "*helping persons with psychiatric or neurological*

*disabilities by preventing or interrupting impulsive or destructive behaviors,"* among other examples. *Id.*

32.     At all relevant times, S.B. has been an individual with a disability within the meaning of the ADA.

33.     At all relevant times S.B.'s service dog was individually trained to do work or perform tasks for the benefit of C.L. and the work or tasks performed by a service animal were directly related to her disability.

34.     Defendant CUT 38's restaurant is a *"place of public accommodation"* within the meaning of Title III of the ADA.

35.     By denying S.B. admission to the restaurant with her service dog, Defendants have violated Title III of the ADA.

36.     Pursuant to 42 U.S.C. §§ 12188(a) and 12205, Plaintiff is entitled to...*declaratory relief* and a *preliminary and permanent injunction* ordering Defendants; to cease its violation of the ADA, as well *as reasonable attorneys' fees and costs* incurred in bringing this action.

37.     As noted in Plaintiff's second claim, a violation of the ADA also constitutes a violation of Florida state disability rights statutes.

## VI.     SECOND CLAIM FOR RELIEF.NEGLIGENCE / NEGLIGENCE PER SE.

By Plaintiff Against All Defendants.

38.     Plaintiff re-alleges and incorporates by reference all previous paragraphs.

39.     At all relevant times, Defendants owed a duty of due care to Plaintiff,.

40.     Defendants breached their duty of care to Plaintiff by denying Plaintiff the reasonable accommodation of permitting her service dog to accompany her during her meal.

By their acts and omissions, Defendants violated the ADA, as alleged herein. At all relevant times, Plaintiff has belonged to the class of persons for whose protection these statutes and regulations were adopted.

41.    Defendants' breach of duty proximately caused, was foreseeable in causing, and was a substantial factor in causing, Plaintiff to suffer significant emotional distress, including hyper-vigilance, flashbacks, sensory overload, increased anxiety, suicidal ideation and self-injurious behaviors, as well as engaged in self-harm, without her service dog present to perform those tasks that alleviate these symptoms. Plaintiff's damages resulted from an occurrence the nature of which the violated statutes and regulations were designed to prevent.

Defendant's breach of duty also resulted in Plaintiff incurring out-of-pocket expenses. Such damages were reasonably foreseeable to Defendants.

42.    By virtue of Defendants' acts and omissions as alleged herein, Plaintiff is entitled to an award of compensatory damages in an amount according to proof.

## VII.    THIRD CLAIM FOR RELIEF.INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

By Plaintiff Against All Defendants.

43.    Plaintiff re-alleges and incorporates by reference all previous paragraphs.

44.    Defendants' actions, in callously denying Plaintiff admission accompanied by her service dog who provides needed assistance, including tasks. not only to aid her daily functioning, but also to support her mental health and ensure her safety from self-harm, constitute extreme and outrageous behavior.

45.    At all times mentioned herein, Defendants' acts were done with reckless disregard to the probability of causing Plaintiff to suffer significant emotional distress, including hyper-vigilance, flashbacks, sensory overload, increased anxiety, suicidal ideation

and self-injurious behaviors, as well as engaged in self-harm, without her service dog present to perform those tasks that alleviate these symptoms.

46.     As a direct and proximate result of Defendants' acts, Plaintiff has suffered significant emotional distress in an amount according to proof.

47.     Plaintiff is entitled to actual and exemplary damages according to proof.

## VIII.   PRAYER FOR RELIEF.

Plaintiff hereby prays for judgment against Defendants according to proof on all claims for relief, as follows:.

1.  For a declaration that Defendants' conduct as alleged herein violated the Americans with Disabilities Act,.

2.  For a preliminary and permanent injunctive relief to prohibit defendant CUT 38 from discriminatorily denying admission of a bona fide service animal to accompany Plaintiff and other individuals with disabilities to the facilities or during treatment;.

3.  For statutory and compensatory damages as permitted by law and according to proof at trial, including treble actual damages,

4.  Interest on compensatory damages at the legal rate from the date of the injury,.

5.  Exemplary damages as permitted by law and according to proof;.

6.  Attorneys' fees and costs of suit, pursuant to 42 U.S.C. § 12188, 42 U.S.C. § 12205,. ..

7.  For other just and proper relief as the Court may order.

**Plaintiff hereby requests a jury trial**

Dated June 8th, 2021

Shauna Barnard
Plaintiff in Pro Per

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL




U.S. POSTAGE PAID
PME 1-Day
AUBURN, CA
95603
JUN 08, 21
AMOUNT
**$26.35**
R2304P118954-16

1007            33128

# PRIORITY
# ★ MAIL ★
# EXPRESS™

## OUR FASTEST SERVICE IN THE U.S.

**UNITED STATES POSTAL SERVICE** | **PRIORITY MAIL EXPRESS®**

EJ 825 197 495 US

CUSTOMER USE ONLY

FROM: (PLEASE PRINT)      PHONE (   )

Matt Gillum
15855 Mc Elroy RD
Meadow Vista Ca 95722

BY:
INSPECTED

PAYMENT BY ACCOUNT (if applicable)
USPS® Corporate Acct. No.      Federal Agency Acct. No. or Postal Service™ Acct. No.

**DELIVERY OPTIONS (Customer Use Only)**

☑ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.
**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)      PHONE (   )

Court Clerk
400 N Miami AV
Miami Fl,
ZIP + 4® (U.S. ADDRESSES ONLY)
3 3 1 2 8

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 Insurance Included.

⇦ **PEEL FROM THIS CORNER**

| ORIGIN (POSTAL SERVICE USE ONLY) | | | |
|---|---|---|---|
| ☑ 1-Day ☐ 2-Day ☐ Military ☐ DPO | | | |
| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage | |
| 95603 | | $ 26.35 | |
| Date Accepted (MM/DD/YY) | Scheduled Delivery Time ☐ 8:00 | Insurance Fee | COD Fee |
| 6 8 | | $ | $ |
| Time Accepted ☐ AM ☐ PM | | Return Receipt Fee | Live Animal Transportation Fee |
| 1153 | | $ | $ |
| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees | |
| $ | $ | | |
| Weight ☑ Flat Rate | Acceptance Employee Initials | $ | |
| lbs.     ozs. | | | |

| DELIVERY (POSTAL SERVICE USE ONLY) | | |
|---|---|---|
| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature |
| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature |

LABEL 11-B, MAY 2021      PSN 7690-02-000-9996

## WHEN USED INTERNATIONALLY, A CUSTOMS DECLARATION LABEL MAY BE REQUIRED.





EP13F July 2013   OD: 12.5 x 9.5

P S 10001000006

# VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE



